IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-00125-01-CR-W-GK |
| | ) | |
| SONNY VLEISIDES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION
## TO SHOW CAUSE AND VIOLATION REPORT

Sonny Vleisides, through undersigned counsel, respectfully responds to the Violation Report, dated September 3, 2013 ("the Report") and states that no fact warrants adverse action on his supervised release, which was slated to conclude September 14, 2013. Mr. Vleisides presents to this Court after three years of federal supervision without a prior complaint or problem. Indeed, the United States Probation Office previously agreed with early termination of Mr. Vleisides' supervision. *See* Motion for Early Termination, filed October 5, 2012. After this Court declined that request, Mr. Vleisides continued on supervision without incident until the unexpected Report. *See* Exhibit 1.

The Report contends that Mr. Vleisides violated a special condition by not seeking express approval of the probation office prior to engaging in a business that involved the solicitation of funds through pre-orders. Respectfully, this allegation is a mystery. No violation of a special condition occurred and no failure of communication exists. Mr. Vleisides, for the entire three years of his supervision, properly performed under the conditions of supervision and expectations of the Probation Office.

Mr. Vleisides, in further support of his memorandum in opposition, states the following.

1

## BACKGROUND

On February 28, 2007, Mr. Vleisides and four codefendants (including his biological father, who involved Mr. Vleisides in the challenged conduct after being wholly absent for much of Mr. Vleisides' life) were charged in the United States District Court for the Central District of California on fraud and money laundering charges. Following a complicated series of factual and legal events, including extradition proceedings, Mr. Vleisides pled guilty to one count and was sentenced to time served by the Court on September 15, 2010.[1]

The sentencing court placed Mr. Vleisides on supervised release for three years. His supervision conditions included the following special condition referenced in the Report:

> The defendant shall not engage, as whole or partial owner, employee or otherwise, in any business involving loan programs, gambling, or gaming activities, telemarketing activities, investment programs or any other business involving the solicitation of funds or cold-calls to customer without the express approval of the Probation Officer prior to engagement in such employment. Further, the defendant shall provide the Probation Officer with access to any and all business records, client lists and other records pertaining to the operation of any business owned, in whole or in part, by the defendant, as directed by the Probation Officer.

Mr. Vleisides' supervision transferred from California when he returned home to Kansas City on June 8, 2011. United States Probation Officer Courtney Pierce has monitored Mr. Vleisides for more than two years ago. Mr. Vleisides consistently has communicated with USPO Pierce on all matters pertinent to supervision including his employment and business activities.

In 2011, Mr. Vleisides worked for Spartan foundation systems and endeavored to develop other ventures, about which he informed USPO Pierce. *See, e.g.*, Exhibit 2 (emails to USPO Pierce with updates concerning Spartan and other ventures). Mr. Vleisides began to focus on developing a computer hardware business – Butterfly Labs - in 2012. He timely apprised USPO

---

[1] By comparison, Mr. Vleisdies' father was sentenced to over 8 years' incarceration. He passed away while in custody.

2

Pierce of all pertinent information. *See, e.g.*, Exhibit 3 (emails to USPO Pierce providing Butterfly Labs corporate filings and other information). Indeed, USPO Pierce toured the Butterfly Labs facilities, more than once. Consistent with the nature of his transparency concerning Butterfly Labs, Mr. Vleisides discussed business activities in his Motion for Early Termination of Supervision, filed October 5, 2012:

> With the generous support of his family and friends, Mr. Vleisides began working to create a line of high speed encryption processors for use in research, telecommunication and security applications.[2] An idea that originally began on napkins, scraps of paper, and spare parts on his kitchen table has taken shape and become the driving success behind a company located here in Kansas City, Missouri named Butterfly Labs. His constant work as a product development executive has helped fuel the success of the venture, which has created approximately 22 jobs in the Kansas City area since 2010. This is particularly noteworthy given the declining status of employment in our country during the same time period.
>
> \*\*\*
>
> Mr. Vleisides seeks to grow the business opportunities for Butterfly Labs. ... In the field of technology, delays in development and exposure of a product can have a negative impact on the future viability of a company. Early release from his term of supervision will ensure that these potential consequences are not a factor.

Mr. Vleisides' continued to report his business activities through 2013 as Butterfly Labs grew and confronted increasing orders and interest along with technical engineering issues. (Exhibit 4)(emails concerning Butterfly Labs information). Presently, Butterfly Labs is a significant going concern involving 50 local employees and multiple production locations.

---

[2] Butterfly Labs is a computer hardware company focused on chip technology that processes data at extremely high speeds. It engages in no cold-calls or target solicitations. It has print advertising and a public web site. Customers contact the company to order computer hardware. While a significant market for this technology has developed in the area of bitcoin mining hardware – which involves data processing - a number of other applications are being explored and interest has been expressed ranging from financial markets that need to process data for secure transactions to federal government agencies that need to process large amounts of data.

3

Exhibit 5 (Affidavit of Jody Stark, Butterfly Labs). Production and technical delays in 2012-2013 did cause delays in shipping and satisfaction of customer orders for certain hardware. This created complaints. Such delays are not uncommon in the tech industry when a company works to make sure a tech product is effective and capable – as opposed to substandard.[3]

Butterfly Labs proactively confronted technical delays in two meaningful ways. One, customers of production-delayed hardware were given the option to reconfirm their order or receive a full refund. Many customers reconfirmed their desire for the technology, but refund requests were processed and $4,988,912.94 in refund payments have been made by Butterfly Labs. Two, technical issues were overcome and products began to ship to customers following the order chronology. To keep customers apprised, a daily shipping report is provided to let people know how the back-log of orders is being addressed. *See* Exhibit 7 (internet posting for customers to update shipping information). Production continues and shipments occur in substantial daily quantities. Moreover, complaints have focused on customers wanting the product quicker – <u>not</u> customers unhappy with the actual product.

## ARGUMENT

**1. Because no violation occurred, there is no basis for the Court to revoke or extend supervision.**

When a probation officer petitions for revocation of a defendant's supervised release, the government must prove by a preponderance of the evidence that the defendant violated a condition of supervised release. *United States v. Ahlemeier*, 391 F.3d 915, 919 (8th Cir. 2004). Typically, a violation occurs when conduct runs contrary to a condition and/or the

---

[3] A number of tech products have confronted delays in shipping production due to unexpected technical issues. *See, e.g.*, The Pebble Watch (Exhibit 6).

4

disclosure/communication requirements of supervision are not met. In the present situation, neither prohibited conduct nor a failure in communication can be proven.

When the government carries its burden, the district court retains discretion whether to revoke the supervised release. *Id.*; *see also* 18 U.S.C. § 3583(e)(3) ("The court *may* . . . revoke a term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release." (emphasis added)); U.S.S.G. §§ 7B1.1(a)(3), 7B1.3(a)(2) (same). Fundamental to a Court exercising its discretion is proof of an actual violation.

The pertinent special condition precludes Mr. Vleisides from engaging in a business involving loan programs, gambling, or gaming activities, telemarketing activities, investment programs or any other business involving the solicitation of funds or cold-calls to customer without the express approval of the Probation Officer prior to engagement in such employment. Butterfly Labs is not a loan program. Butterfly Labs does not involve gambling or gaming activities. Butterfly Labs does not engage in telemarketing activities. Butterfly Labs does not involve investment programs. Butterfly Labs does not "cold call" customers. Butterfly Labs does not solicit funds from customers other than to advertise its products and take orders and payment for computer hardware – like myriad other tech companies. The Report, however, states: "Vleisides did not seek the express approval of the probation officer prior to engaging in a business that involves the solicitation of funds through pre-orders." Violation Report, at 2. But the special condition does not discuss "pre-orders" and it is hard to square the suggestion that the Probation Office was not advised of Mr. Vleisides' work with Butterfly Labs and familiar with its operations. Mr. Vleisides provided information to USPO Pierce regularly about Butterfly Labs, its operations and his role with the company. The flow of information continued

5

over a significant period of time and included USPO Pierce making site visits to the Butterfly Labs production facilities.

Notably, the special conditions state that the defendant shall provide the Probation Officer with access to any and all business records, client lists and other records pertaining to the operation of any business owned, in whole or in part, by the defendant, as directed by the Probation Officer. There is no suggestion that Mr. Vleisides failed to provide any material requested by the Probation Office, indeed there is clear evidence of him providing USPO Pierce with requested shipping documents, tax filings and other information. The Report states, "Vleisides' finances have been in question for the past few months." However, there is no question or request actually ignored by Mr. Vleisides.

2. **In addition to the absence of evidence, the legal standards demonstrate there is no basis for the Court to revoke or extend supervision.**

18 U.S.C. § 3583(d) limits special conditions of supervised release in three ways. *United States v. Crume*, 422 F.3d 728, 732 (8th Cir. 2005). "First, the special conditions must be 'reasonably related' to five matters: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical or other correctional needs." *Id.* (citations omitted). Second, "a condition of supervision must 'involve no greater deprivation of liberty than is reasonably necessary' to serve the above goal-related factors." *Wroblewski*, 715 F.3d at 702 (quoting 18 U.S.C. § 3583(d)(2) (internal brackets omitted)). Third and finally, "the conditions must be consistent with any pertinent policy statements issued by the sentencing commission." *Crume*, 422 F.3d at 733. Conditions that are overbroad, vague, or impose a greater deprivation of liberty than is reasonably necessary to serve the purposes of supervised release must either be interpreted narrowly or else be struck down on

6

constitutional grounds. *See United States v. Crume,* 422 F.3d 728, 733 (8th Cir. 2005) (special conditions must be "narrowly-tailored" to pass muster) (citing *United States v. Ristine,* 335 F.3d 692, 697 (8th Cir. 2003)) *see also United States v. Bender,* 566 F.3d 748, 751 (8th Cir. 2009) (collecting cases; vacating special conditions for vagueness). Furthermore, "[d]ue process requires that the conditions of supervised release be sufficiently clear to inform a released prisoner of what conduct will result in his or her return to prison." *United States v. Kennedy,* 106 F. App'x 688, 690 (10th Cir. 2004).

In the present situation, the Report cites a special condition that prohibits business conduct absent the approval of the Probation Office. If the condition is not sufficiently clear, a court cannot find that a defendant violates such a condition. *See, e.g., United States v. Spencer,* 640 F.3d 513, 521 (2d Cir. 2011) (finding district court erred in finding violation of condition; likening the requirement of 18 U.S.C. 3583(f) to the rule of lenity). Open-ended delegations of authority to probation officers via overly broad special conditions also create the potential for abuse of probation officers. *United States v. Scott,* 316 F.3d 733, 736 (7th Cir. 2003). In the end, the district court's interpretation of the meaning of the condition must be reasonable. *United States v. Metzener,* 584 F.3d 928, 933 (10th Cir. 2009). Likewise, a defendant's performance under the conditions must be reasonable. In the present case, neither Mr. Vleisides nor Butterfly Labs engaged in the type of business conduct prohibited by the special condition. Regardless, he provided continual transparency to the Probation Office about the business activities so as to evoke any complaint or objection – and no such issue was raised.

"Generally, conditions of probation and supervised release are interpreted in light of common sense." *United States v. Spann,* 12-20114, 2013 WL 3991782, at *7 (D. Kan. July 30, 2013) (footnote and internal quotation marks omitted). There is no common sense application of

the cited special condition to the facts that would warrant revocation or other modification of Mr. Vleisides' supervision.

## CONCLUSION

Based on the foregoing, Mr. Vleisides respectfully requests the Court take no action on the Violation Report.

Respectfully submitted,

BERKOWITZ OLIVER WILLIAMS
SHAW & EISENBRANDT, LLP

By: /s/ Shazzie Naseem
Shazzie Naseem    MO#59142
Jeff D. Morris    MO#45423
2600 Grand Blvd, Suite 1200
Kansas City, Missouri 64108
(816) 561-7007 (telephone)
(816) 561-1888 (facsimile)
Email: snaseem@bowse-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September, 2013, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which sent the notification of filing to all counsel of record.

/s/ Shazzie Naseem
*Attorney for Defendant*

8